FILED

2018 FEB 12 PM 12: 24

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

| | | |
|---|---|---|
| Luther Johnson, Pro Se | : | Case No. **3: 18 CV 331** |
| | : | Honorable Judge: **JUDGE HELMICK** |
| Plaintiff, | : | |
| | : | |
| v. | : | **MAG. JUDGE JAMES R. KNEPP II** |
| | : | |
| Lisa Peterson, Dr. Cataldi, Dr, Perez, | : | Complaint |
| | : | Jury Trial Demand |
| and Nurse Yochum ( Sued in their | : | |
| individual capacities), et. Al; | : | |
| Defendants. | : | |

PRELIMINARY STATEMENT

This is a Civil Rights Action filed by Luther Johnson, a state prisoner, for damages,
injunctive relief, and declaratory judgment under Title 42 U.S.C. Section 1983, alleging
Deliberate Indifference; In violation of the Plaintiffs 8th and 14th U.S. Constitutional
Amendment Right, which also includes violation of Plaintiffs Equal Protection Rights.

JURISDICTION

1)      This Court has jurisdiction over Plaintiffs claims of violation of Federal

Constitutional Rights under 42 U.S.C. Section 1331 (a) and 1343.

2)      This Court has jurisdiction over the Plaintiffs state law tort claims under Title 28

U.S.C. Section 1367.

PARTIES

3)      Defendant Lisa Peterson is the Allen Oakwood Correctional Institution (AOCI),

and is being sued in her individual capacity;

4)      Defendant Dr. Cataldi is the Lead Doctor at AOCI, and is being sued in his

individual capacity;

5)      Defendant Dr. Perez was the Lead Doctor at AOCI, and is being sued in his

individual capacity;

6)      Defendant Nurse Yochum is a Registered Nurse at AOCI, and is being sued in

his individual capacity;

7)      The Plaintiff, Luther Johnson, is incarcerated at AOCI, 2338 North West Street (

P.O. Box 4501) Lima, Ohio 45802, during the events in this complaint.

8)      All defendants have acted, and/or continue to act, under the color of state law at

all times relevant to this complaint.

FACTS

9)  On 2.9.16, Plaintiff filed an Informal Complaint Resolution (ICR) to J. Wildman ( Acting

Health Care Administrator in place of Lisa Peterson), making him aware that , "I contracted

Hep C in the year 2000, eight years ago I had my first biopsy taken. Results showed minimal

fibrosis. I need another biopsy taken to see if I have developed cirrhosis yet. My alanine

aminotransferase (A.L.T.) is 56, showing a worsening of the disease. Ammonia levels are 1.11 they were much higher, I've been having sleep disturbances, mental confusion, sluggishness, and weight gain....". To which Plaintiff received no response.

10) In the year 2007 Plaintiff had his first biopsy that showed Grade 2 portal fibrosis at stage 1. On 8.1.16, Plaintiff had a second biopsy that showed Grade 2 portal fibrosis at stage 2 where scarring occurred and extended to the outside areas that contained fibrosis, it was also concluded that Plaintiff had a Fatty liver. Upon finding out that the Plaintiffs Hep C condition had worsened, the AOCI Medical Staff still refused to give Plaintiff treatment for his Hep C virus (HCV).

11) On 2.19.16, Plaintiff filed a Notification of Grievance (NOG) to the AOCI Institutional Inspector (IIS) making her aware that he needs HCV treatment because his HCV is worsening.

12) On 3.7,16, Plaintiff received Disposition of Grievance to his 2.19.16 Notification of Grievance which did not address his request for HCV treatment.

13) On 3.10.16, Plaintiff filed an Appeal to the Chief Inspector requesting HCV treatment, and making her/him aware that his HCV condition is worsening and that the AOCI Medical Staff are refusing to treat the HCV.

14) On 3.21.16, Plaintiff received the Decision of the Chief Inspector, which refused him HCV treatment.

15) On 3.1.16, Plaintiff filed an ICR to the AOCI Health Care Administrator Lisa Peterson stating, "Standard Rule that was formed that inmates must meet in order to get treatment, this formulation is unconstitutional and a cheap sick way to get out from having to treat inmates who are chronically infected with Hep C".

16) On 3.14.16, R. Yochum responded to Plaintiffs 3.1.16 ICR stating, " Guidelines have been

established for evaluation and management of inmates with chronic hepatitis. They may be found in protocol C-5 testing and treatment guidelines for chronic hepatitis C, you may access it in the library".

17) On 3.18.16, Plaintiff filed a NOG to the AOCI IIS about his 3.1.16 ICR submitted to Lisa Peterson, which outlined that he is not in agreement with the ODRC insurance contract which obligates him to meet a certain criteria before being able to receive HCV treatment. Plaintiff made the IIS aware that he was being denied HCV treatment, and also requested that he be granted treatment in the form of Harvoni.

18) On 4.1.16, Plaintiff received a Disposition of Grievance to his 3.18.16 NOG, in which the IIS still refused to get Plaintiff HCV treatment.

19) On 4.11.16m Plaintiff filed an Appeal to the Chief Inspector making him/her aware that he's being denied HCV treatment due to the cost of the treatment, that the virus is affecting his health and that the virus threatens both his health and his life.

20) On 4.18.16, Plaintiff received the Decision of the Chief Inspector to the NOG dated 4.11.16 that stated , " My response, after review of the above mentioned information, is that the medical staff at your facility is giving you the proper care within the ODRC guidelines. I encourage you to maintain close contact with staff to ensure that your current medical concerns are being addressed. No further action will be taken in regard to this appeal at this time". This 'proper care' that's mentioned, never treated Plaintiffs HCV.

21) On 9.8.16, Plaintiff filed an ICR to Dr. Perez that outlined the new symptoms that Plaintiff was suffering due to his HCV progression and also the progression of fibrosis in the Plaintiff.

22) On 9.12.16, Plaintiff received a response to the 9.8.16 ICR sent to Dr, Perez it said, " Your case is pending collegial review as Dr. Perez discussed with you at your appointment 8.30.16. Your

ammonia level in April 2016 decreased and is better per A. R. 5120-9 please send a kite before and ICR". This response never addressed the HCV progression that Plaintiff has suffered and the A.R. (Administrative Code) that it mentioned is non-applicable in this case ( Plaintiff believes that the A.R. Was only mentioned to make it appear that the disregard shown by the AOCI Medical Staff was justified by policy).

23) On 9.25.16, Plaintiff filed a NOG to the AOCI IIS that outlined the deliberate indifference that the AOCI Medical Staff were practicing against Plaintiff in the form of refusing to properly treat his HCV until the virus progresses to stage three, which could ultimately cause Plaintiffs death.

24) On 10.5.16, Plaintiff received Disposition of Grievance to his 9.25.16 NOG that made him aware that he was to receive no HCV treatment due to ODRC protocol guidelines. It also mentions his HCV progression to Grade 2 Stage 2.

25) On 10.8.16, Plaintiff filed an Appeal to the Chief Inspector about the 10.5.16 Disposition of Grievance. The Appeal outlined Plaintiffs HCV progression, Dr. Perez's deliberate disregard to Plaintiffs HCV because of ODRC policy, criteria and guidelines and that the Plaintiff asserts that he's being denied treatment because the price of the treatment.

26) On 12.9.16, Plaintiff received the Decision of the Chief Inspector that stated, " My response following a review of your concern is that the medical staff at your facility is providing you the proper care within ODRC guidelines and protocol C5, 'testing and treatment of Hepatitis C'. I encourage you to keep in close contact with them so that they can continue to monitor your health status for changes, should you have questions about your APRI calculation value please contact the ID nurse and physician who are managing your care. There will be no further action concerning this appeal at this time." This decision refused to give Plaintiff adequate medical treatment for HCV, while at the same time justifying AOCI's Medical Staff refusal to treat

Plaintiffs HCV.

27) On 12.9.16, Plaintiff filed an ICR to Dr. Perez making him aware that Plaintiffs platelets range was below the normal 150 range, and that this is a symptom of HCV progression.

28) On 1.1.17, Plaintiff filed an NOG making the AOCI IIS aware that the longer Plaintiffs HCV goes untreated, the higher the risk is for him to contract cancer due to the HCV progression. Thus-fore, subjecting Plaintiff to unnecessary risk that can be avoided by adequate medical treatment of his HCV.

29) On 1.10.17, Plaintiff received a Disposition of Grievance for the 1.1.17 NOG that Plaintiff filed. The Disposition stated, " Again, per ODRC protocol you do not meet all of the inclusion criteria to be considered for anti-viral treatment". The AOCI Medical Staff even after being made aware that Plaintiffs HCV has progressed still refused to properly treat Plaintiff until the HCV progresses to a more severe stage ( That's then recognized by ODRC policy). Plaintiff has made multiple AOCI Medical Staff aware of his continuous pains and symptoms of HCV, the risk of contracting cancer due to his HCV not being treated, and the recommendations of the American Association for the Study of Liver Disease ( AASLD) and the Infectious Disease Society of America ( IDSA).

30) On 1.15.17, Plaintiff filed an Appeal to the Chief Inspector making him/her aware that the ODRC protocols are contrary to the AASLD and IDSA recommendations, which recommend treatment for all patients with chronic HCV infection, except those with short life span expectancies that cannot be remedied by treating HCV class 1 level A rating.

31) On 2.18.17, Plaintiff received the Decision of the Chief Inspector which again denied him HCV treatment.

32) On 7.6.17, Plaintiff filed an ICR to Mrs. Peterson making her aware of the AASLD and IDSA

recommendations for treatment for all patients with chronic HCV, except those with short life span expectancies. Plaintiff also plead for treatment due to him suffering more symptoms of HCV progression.

33) On 7.21.17, Plaintiff filed an NOG that outlined his inflammation, high ammonia levels, and HCV symptoms that may lead to a host of other medical complications, including cancer and potentially death. In the NOG Plaintiff made the AOCI IIS aware that if his HCV isn't treated it will progress in further fibrosis and eventually cirrhosis, which could result in Plaintiffs death. Plaintiff requested the HCV treatment of Harvoni for twelve weeks in the NOG.

34) On 8.7.17, Plaintiff received Disposition of Grievance filed 7.21.17. The Disposition denied Plaintiffs request for HCV treatment because he hasn't progressed to stage 3 of the virus yet, which is required by ODRC Policy. Throughout the ODRC grievance procedure Plaintiff has made Mrs. Lisa Peterson, Dr. Perez, Dr. Cataldi, and Mr. Yochum aware that his HCV has progressed and it is causing him pain in a multitude of ways. All of the above named AOCI Medical Staff have been made aware of the AASLD and IDSA recommendations for HCV treatment, but they still refuse to treat Plaintiffs HCV until he reaches stage 3 of the virus, which could as both the AASLD and IDSA say, lead to Plaintiffs death. Plaintiff, has made the AOCI Medical Staff named above aware of his HCV progression from stage 1 to stage 2, yet they still refuse to treat his HCV. Plaintiff, brings to this Courts attention that delaying HCV treatment will only progress and exacerbate the virus.

35) On 8.9.17, Plaintiff filed an Appeal to the Chief Inspector that stated, "...The conflict is the ODRC protocol is opposite of the AASLD, and IDSA protocol. AASLD; IDSA their treatment with Harvoni is recommended for all patients with chronic HCV except those with short life expectancies, they say benefits of treatment at earlier fibrosis stages is better, the study results argue for consideration of earlier initiation of treatment. Greater mortality benefit if treatment is

initiated at fibrosis stages prior to stage 3...Further ODRC; AOCI protocol only treat inmates at their worsened stages of fibrosis next to the last stage of cirrhosis. So they are allowing further...fibrosis damage, subjecting me to liver compliacations, possible cirrhosis, symptoms and damage...". Plaintiff, has again made the AOCI Medical Staff aware that their non treatment of Plaintiffs HCV progression, that could result in more severe stages and possible even death.

36) On 8.24.17, Plaintiff received the Decision of the Chief Inspector to appeal filed on 8.9.17 that refused him HCV treatment because he hasn't reached stage 3 of the virus, yet.


37) Plaintiff, has consistently made all Defendants aware that his HCV has progressed, his increase in symptoms, the AASLD and IDSA recommendations for treatment to all HCV patients besides those with short life sp[an expectancies, the risk that non treatment could lead to Plaintiffs death, and the difference between the ODRC's protocol and the AASLD and IDSA's protocol. The defendants have consistently refused to treat Plaintiffs HCV, even after being made aware of it's progression and risk that it posed to Plaintiffs life. Due to Plaintiffs HCV progression from stage 1 to stage 2, the defendants should have administered adequate HCV treatment.


## CONSTITUTIONAL VIOLATIONS OF EACH DEFENDANT

38) Plaintiff believes Defendant Lisa Peterson knowingly violated his 8th and 14th Amendment U.S. Constitutional Rights; Id. herein at paragraph 15,34,and 37.

39) Plaintiff believes Defendant Dr, Perez violated his 8th and 14th Amendment U.S. Constitutional Rights; Id. herein at paragraph 21,22,34,and 37.

40) Plaintiff believes Defendant Dr. Cataldi knowingly violated his 8th and 14th Amendment U. S.

Constitutional Rights; Id. herein at paragraph 34 and 37. Dr. Cataldi refused to treat Plaintiffs HCV after Plaintiff made him aware of his HCV progression ( Dr. Cataldi replaced Dr. Perez as the Lead Doctor at AOCI).

41) Plaintiff believes Defendant Mr. Yochum knowingly violated his 8th and 14th Amendment U.S. Constitutional Rights; Id. herein at paragraph 16,34 and 37.

42) All defendants personally involved themselves by refusing to treat Plaintiffs HCV, even after being made aware of it's progression and the risk that it posed to Plaintiffs life.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

43) The Plaintiff has exhausted all of his Administrative Remedies (i.e. Administrative Code 5120-9-31, steps 1,2, and 3), with respect to all claims and all named defendants as demonstrated by decisions of the Chief Inspector ( DRC-4427-FORM):

  a) ACI-02-16-000118

      b) ACI-03-16-000064

  c) ACI-09-16-000144

      d) ACI-01-17-000007

      e) ACI-07-17-000077

## RELIEF REQUESTED

44) Wherefore, Plaintiff requests that he be granted the following relief:

      a) Award Compensatory damages (JOINTLY) of $50,000,000.

b) Award Punitive damages of $200,000 against each Defendant.

c) Award Injunctive relief in the form of granting Plaintiff HCV treatment with
   Harvoni.

d) Grant as an addition to the relief requested above, any other relief as it may
   appear to the Court that Plaintiff is entitled to.

X _Luther Johnson_

## CERTIFICATE OF SERVICE

Pursuant to Title 28 U.S.C. Section 1746, I the undersigned do hereby certify under the penalty of perjury that all stated herein is true, and that a true copy was sent to the United States District Court, via U.S. Postal mail, postage prepaid, by placing it in the AOCI's Inmate outgoing mailbox on this _7TH_ day of _FEB._ 2018.

X _Luther Johnson_